BEYERLE *v.* A. FOCHTMAN DEPARTMENT STORE.

CANCELLATION OF INSTRUMENTS—CHATTEL MORTGAGES—DURESS.

A chattel mortgage on household goods obtained when the sheriff visited the mortgagor's home late at night and threatened to remove the goods under writ of execution and to put him in jail if he offered any resistance, was properly held by the court below to have been obtained by duress and should be set aside.

Appeal from Emmet; Shepherd (Frank), J.    Submitted April 8, 1927.    (Docket No. 56.)    Decided June 6, 1927.

Bill by Henry J. Beyerle and another against the

Cancellation of Instruments, 9 C. J. § 195.

A. Fochtman Department Store to set aside a chattel mortgage. From a .decree for plaintiffs, defendant appeals. Affirmed.

*Pailthorp & Pailthorp,* for plaintiffs.

*Mesick & Miller,* for defendant.

McDONALD, J.   This bill was filed for the purpose of having set aside a chattel mortgage on household goods on the theory that it was secured by coercion and duress. . The plaintiffs are husband and wife. The defendant is a domestic corporation engaged in a mercantile business at Petoskey, Michigan. Henry J. Beyerle was indebted to the defendant in the sum of $559.23. On April 28, 1925, the defendant caused a writ of attachment to issue and levied on household goods belonging to the plaintiffs and in their possession at their home in Petoskey. In order to secure a release of the levy and the payment of their debt to the defendant, they gave him a chattel mortgage on their household goods. The bill alleges that the writ of attachment was issued on insufficient grounds, and that the chattel mortgage was secured by the defendant under such circumstances as to amount to coercion and duress, and prays that it may be set aside. The defendant answering, denied the allegations of the bill, and asked to have it dismissed. On the hearing the circuit judge found with the plaintiffs, and set aside the mortgage. From the decree entered the defendant has appealed.

In disposing of the issue, we may pass the contention relative to the validity of the writ of attachment. The real question involved is whether the chattel mortgage was secured by duress. The controlling events leading up to the execution of the mortgage may be briefly stated as follows: When the writ of attachment was issued it was placed in the hands of the sheriff. Act-

ing under the directions of the defendant's attorney, he went to the plaintiffs' home about 10:30 o'clock at night, and attached their household goods. He took appraisers with him. They proceeded to inventory and appraise all of the household goods. They were thus engaged until 2 or 3 o'clock in the morning, at which time the mortgage was given and the levy released. What took place between the officer and the plaintiffs during the night is somewhat in dispute, but it is satisfactorily established by the evidence that the sheriff told them that he was going to remove all of their household goods, and that he was instructed by the defendant's attorney that he could handcuff Mr. Beyerle and take him to jail if he offered any resistance. Mrs. Beyerle became hysterical. Her husband advised her to go to bed. The sheriff told her not to do so because "he might have to carry her out with the bed." After the appraisal had been completed, the sheriff telephoned to Mr. Keating, the defendant's attorney, after which he told Beyerle that Keating had directed him to call a van and remove the furniture. He said that he did not like to take such a course, and suggested that it might be prevented if the plaintiffs gave the defendant a chattel mortgage on the goods. Another conference with Mr. Keating brought the ultimatum that unless the mortgage was given the household goods would be removed. Under these circumstances, the mortgage was executed. The appraised value of the goods covered by the mortgage was $3,000.

If the defendant and its attorney had deliberately planned to overcome the will of the plaintiffs and force them to execute this mortgage, they could not have employed more coercive means than the oppressive use of the writ of attachment. The service of the writ in the nighttime was altogether inexcusable. They had no reason to believe that the plaintiffs were about

to remove the goods from the city of Petoskey. It was not necessary for the protection of defendant's interests that a levy should be made and the goods removed at such an unreasonable time. It is fair to assume that they had a purpose in employing such unusual means, and the circumstances indicate that their purpose was to compel the plaintiffs to execute the mortgage. As was said by the circuit judge, the interests of the defendant would have been as fully protected if the sheriff had waited until the next morning before proceeding to execute the writ. Instead, he kept the plaintiffs up all night, intimidated them by talk of putting handcuffs on Mr. Beyerle and taking him to jail, and by threatening to remove all of their household goods, leaving them and their children without a bed to sleep on or a stove upon which to prepare their breakfast. The situation produced by the conduct of the officer acting under the directions of Mr. Keating, the defendant's attorney, and the demands of Mr. Keating himself, forced the plaintiffs to give the mortgage or suffer all of their household effects to be taken away from them. The time and circumstances gave the plaintiffs no opportunity for normal reflection. They were not dealing at arm's length with the defendant and its agents. A layman is never dealing at arm's length when doing business with an officer. It is true that the officer kindly permitted Mr. Beyerle to telephone to his lawyer, and that the lawyer advised him that the sheriff had no right to do what he was doing there that night, but this advice did not relieve the minds of the plaintiffs, who were forced to deal with a belligerently disposed officer who claimed the right to handcuff Mr. Beyerle and put him in jail. The circumstances were such that they were not permitted to exercise their free will power. They were forced to make the mortgage by the unlawful acts of the defendant and its agents. The trial

court correctly held that the mortgage was obtained from the plaintiffs by duress and should be set aside.

The decree is affirmed, with costs to the plaintiffs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.